# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN D. HORTON, | CASE NO. 1:09-cv-01441-SMS |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 51) |
| v. | |
| SIERRA CONSERVATION CENTER, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 43) |
| Defendant. / | ORDER DIRECTING CLERK TO ENTER JUDGMENT FOR DEFENDANT |

Plaintiff, John D. Horton, proceeding *pro se* and *in forma pauperis*, filed his complaint in this matter on August 17, 2009, alleging he was wrongfully discharged as a result of national origin, age, and sex discrimination. On July 12, 2010, Plaintiff amended the complaint to add a claim of sexual discrimination by a correctional officer who allegedly yelled at Plaintiff in public, "Why do you have your hands on your hips like a girl?" Defendant California Department of Corrections and Rehabilitation (CDCR) answered, contending that Plaintiff was appropriately terminated for legitimate reasons during his probationary employment period.

Defendant moved for summary judgment on December 29, 2011; Plaintiff moved for summary judgment on January 3, 2012. Having reviewed the memoranda of points and authority submitted by the parties in both motions as well as the record as a whole, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.

///

**I.     Undisputed Facts**

Plaintiff is a Hispanic man over forty years of age. Donna Seifert and Hillary Iserman were on the interview panel that recommended hiring Plaintiff. On April 23, 2007, Iserman provided Plaintiff with a memo clarifying Plaintiff's duties as a Senior Librarian. Plaintiff claims that Iserman would "barge in" the Library but would not do that to teachers in their classrooms.

**II.    Defendant's Additional Facts**

Sierra Conservation Center (SCC) is a prison located in Sonora, California. SCC inmates have access to adult educational programs including academic courses, courses to prepare them to take the General Educational Development (GED) class, and two libraries, one located in the education building and one in the prison's maximum security area.

In 2007, the adult school employed approximately 42 employees including administrators, office staff, librarians, a library assistant, academic and recreation/physical education teachers and coaches, and vocational teachers. Approximately 1100 inmates were students. Principal Donna Seifert was the lead administrator. Two vice principals, who reported to the principal, supervised the teachers and library staff. At his deposition, Plaintiff testified that the only educational employee that he knew to be younger than forty years old was a male librarian.

In December 2006, Plaintiff, a Hispanic man who was older than forty, applied for a vacant Senior Librarian position at SCC. Seifert and Vice Principal Hillary Iserman served on the interview panel for the position. (Iserman is a white woman who is younger than forty years old.) Prior to the interview, Seifert and Iserman reviewed Plaintiff's resume. The other individuals interviewed for the position were not Hispanic or male. After the panel members agreed that Plaintiff was the best candidate, Seifert drafted a memorandum to the warden recommending Plaintiff, which the other panel members signed.

Iserman, who was to supervise Plaintiff, called him to offer him the position. He accepted. Plaintiff began work at SCC in February 2007, scheduled for probation for his first year of employment.

///

1   The probationary period is an extension of the interview process which gives
2   management the opportunity to observe the employee's conduct and capabilities to see if he or
3   she is fit for the position he or she was hired to fill.  Although a probationary employee cannot be
4   rejected during probation for a discriminatory reason or in bad faith, he or she may be rejected at
5   any time during the probationary period for any of multiple reasons set forth by statute.
6   As vice principal, Iserman was responsible for supervision of academic credentialed
7   teaching staff, physical fitness, and the library.  As Plaintiff's supervisor, Iserman was
8   responsible for his training and development.  Her job responsibilities included observing
9   Plaintiff in the library, making sure the environment was safe, and ensuring that Plaintiff
10  performed his job.  Horton contended that Iserman would "barge in" to the library but would not
11  do that to teachers in their classrooms.
12  At his deposition, Plaintiff testified that he was unhappy about his employment at SCC
13  because the Senior Librarian position was not a supervisory position.  On April 20, 2007,
14  Plaintiff wrote a memo to Seifert complaining about his job and requesting that the
15  organizational chart be realigned to provide him with supervisory authority.  In the memo,
16  Plaintiff made disparaging remarks about Iserman, describing her as "hyperkinetic" and
17  recommending that she have a "medical examination to determine if she is suffering from some
18  type of hormonal imbalance."
19  On April 20, 2007, Plaintiff refused to attend a meeting relating to library issues with
20  Iserman and acting principal Cal Conley.  At his deposition, Plaintiff claimed that he refused to
21  attend the meeting because he wanted to speak with someone in the union about placing Iserman
22  "into some kind of psychiatric facility."
23  On April 23, 2007, Seifert met with Plaintiff to discuss a counseling memo she wrote
24  regarding Plaintiff's disrespect of his supervisors, Iserman and Conley; his refusal to attend the
25  meeting relating to library issues; the letter in which Plaintiff described Iserman as
26  "hyperkinetic" and recommended that she have a "medical examination to determine if she is
27  suffering from some type of hormonal imbalance"; and his leaving inmates unattended in the
28  ///

library. The same day, Iserman provided Plaintiff a memorandum clarifying his duties as Senior Librarian.

On April 25, 2007, Iserman told Seifert that she was offended and felt that Plaintiff's statements could be interpreted as some form of sexual harassment.

On May 4, 2007, Plaintiff's first probation report noted that he needed to improve his work habits and relationships with other people.

On May 9, 2007, Plaintiff attempted to bring unapproved books into SCC, in violation of CDCR policy. When Correctional Sergeant Pamela Pouncy spoke with Plaintiff regarding the proper procedure to bring books into the institution, Horton replied rudely.

Plaintiff informed Iserman that he wanted to file an "EEO complaint" against Sergeant Pouncy for making rude comments. Iserman gave Plaintiff information regarding SCC's Equal Employment Opportunity Counselors and the forms that he needed to have donated books approved for entry into SCC.

Captain Calhoun, Lieutenant Houghes, Sergeant Pouncy, Iserman, and Horton met to review staff relations policy and gift donations policy. No further action was taken against Plaintiff regarding this incident.

On May 16 and 17, 2007, Plaintiff used a state-owned computer during his work hours to prepare personal legal documents relating to a criminal complaint against Plaintiff. Such use violated both state regulations and a computer use agreement Plaintiff signed as a SCC employee.

On June 4, 2007, Plaintiff was convicted of hit-and-run driving. He was sentenced to serve time in jail. He did not inform his supervisor or the personnel office of this conviction or sentence as required by California Code of Regulations § 3411.

Later, as she arrived for work, a witness to the hit-and-run accident saw Plaintiff in the SCC parking lot and notified SCC personnel that she had just seen the perpetrator of a hit-and-run accident there. She explained that she had witnessed the accident while off duty. Employee Relations Officer Andrew McCluskey confirmed Plaintiff's hit-and-run driving conviction on

///

1  June 4, 2007.  Plaintiff was sentenced to serve time in prison but had not served it.  McCluskey
2  advised Seifert of his investigation.
3         At 7:45 a.m. on June 12, 2007, Sergeant Belders found Plaintiff sleeping in his car in the
4  SCC parking lot.  When Belders asked Horton why he was sleeping there, Plaintiff replied
5  rudely.  Belders reported the incident to Seifert.
6         At an unspecified time, librarian Mitch Lindenbaum, from whom Plaintiff rented a room,
7  reported to Seifert that he was concerned about Plaintiff's erratic behavior, which made
8  Lindenbaum fear for his safety.  Lindenbaum reported that he had performed an internet search
9  on Plaintiff and discovered that he was involved in prior lawsuits against various governmental
10 agencies.  Seifert performed her own internet search and discovered that Plaintiff had previously
11 worked for the Army and other governmental agencies that he had not disclosed on his resume or
12 application.  At Seifert's direction, labor relations representative Gail Bodenhammer contacted
13 the Army and learned that the Army had employed Plaintiff but had dismissed him on probation.
14        On his application for employment, Plaintiff indicated that he had never been dismissed
15 or terminated from any position for performance or disciplinary reasons.  In fact, Plaintiff had
16 been terminated during his probationary period from a position at the Marine Corps Air Station,
17 El Toro, California, in June 1990; from Shaw Air Force Base, South Carolina in March 2000;
18 and from the Veterans Health Administration Medical Center Library in June 2003.  On July 8,
19 2003, Plaintiff was terminated from his position with the Department of the Army at Fort
20 Belvoir, Virginia, for providing false information on a Declaration of Federal Employment.  In
21 June 2006, he was failed on probation from Larned State Hospital.
22        Seifert consulted with McCluskey, who drafted the final rejection on probation report.
23 When preparing the notice of rejection on probation, CDCR staff discovered Plaintiff's May
24 2007 misuse of the state-owned computer. McCluskey presented the final form of the report and
25 accompanying documentation to Acting Warden I. D. Clay, who signed it.  McCluskey served
26 the rejection packet on Plaintiff.
27 ///
28 ///

Plaintiff was rejected during probation on June 27, 2007. The rejection was based on his qualifications, the good of the service, failure to demonstrate merit, efficiency, fitness or moral responsibility, and fraud in securing employment.

On August 8, 2007, Plaintiff filed a complaint with the California Department of Fair Employment and Housing and Equal Employment Opportunity Commission (EEOC) alleging discrimination based on national origin, age, and retaliation. On August 12, 2009, the EEOC issued a right-to-sue letter to Plaintiff.

At his deposition, Plaintiff testified that he was not aware of anyone who was treated differently for behaving as he had during his employment at SCC. Plaintiff never heard either Iserman or Pouncy make any comments about Hispanic people or any other person's race or age. He admitted that Iserman treated with respect other employees who were older than 40 years. Plaintiff never saw Sergeant Pouncy treat any other employees differently than she treated him. Horton also admitted at his deposition that he may currently have outstanding arrest warrants in New Jersey and California.

**III.   Summary Judgment**

    **A.   F.R.Civ.P. 12(b)(6)**

Plaintiff purports to bring his summary judgment motion pursuant to F.R.Civ.P. 12(b)(6). This rule does not address summary judgments. Rule 12(b)(6) is a defense to a pleading in which a defendant contends that the Plaintiff has failed to state a claim on which relief can be granted. The Court will proceed as if Plaintiff brought his action under the appropriate rule, F.R.Civ.P. 56.

    **B.   Standard for Summary Judgment**

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c)(2); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings,

6

and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

When the moving party will have the burden of proof on an issue at trial, as Plaintiff will have for the substantive claims set forth in the First Amended Complaint, he must demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun*, 509 F.3d at 984. When the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or merely by pointing out that no evidence supports an essential element of the non-moving party's claim. *See Soremekun*, 509 F.3d at 984; *Nissan Fire and Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine*, 210 F.3d at 1102-03. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Id.* at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.) *(quoting* F.R.Civ.P. 56(e)), *cert. denied*, 555 U.S. 827 (2008).

The evidence of the opposing party must be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson*, 477 U.S. at 255; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th

Cir. 2003). Nonetheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1163 (E.D.Cal. 2008), *aff'd*, 340 Fed.Appx. 377 (9th Cir. 2009); *UMG Recordings, Inc. v. Sinnott*, 300 F.Supp.2d 993, 997 (E.D.Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *del Carmen Guadelupe v. Negron Agosto*, 299 F.3d 15, 23 (1st Cir. 2002). A court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, even though a court is not required to examine the entire file for evidence establishing a genuine issue of material fact when the opposing party has not set forth the evidence with adequate references. *See Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

### C. Discrimination Under Title VII

Title VII prohibits employers from discriminating against an individual based on race, color, religion, gender, or national origin. 42 U.S.C. § 2000e-2. To maintain a claim of discrimination in violation of Title VII, a plaintiff must establish that (1) he was a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he was discharged, and (4) the employer sought a replacement with qualifications similar to those of the plaintiff or continued to need an employee with those skills. *Sengupta v. Morrison-Knudsen Co., Inc.*, 804 F.2d 1072, 1075 (9th Cir. 1986). To maintain a claim for discrimination on the basis of national origin in violation of Title VII, a plaintiff must establish that he (1) belongs to a protected class; (2) was performing according to his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) other employees with similar qualifications were treated more favorably. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 n. 5 (9th Cir. 2003).

///

///

8

Plaintiff alleges wrongful termination. The parties do not dispute that Plaintiff was Hispanic; that he was terminated from his job, an adverse employment decision; or that Defendant continued to require the services of a Senior Librarian.

Thus, the critical factor is whether Plaintiff performed his job in a satisfactory manner according to his employer's legitimate expectations. Plaintiff fails to meet his initial burden on this element. Simply put, Plaintiff sets forth no evidence, other than his own assertions, that suggests that Plaintiff was performing the position of a probationary Senior Librarian in a satisfactory manner. In a summary judgment motion, a Plaintiff may not rest merely on the allegations in his pleadings but must present admissible evidence showing there is a genuine issue of fact for trial. F.R.Civ.P. 56(e)(3); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). A party's subjective personal opinions do not raise a genuine issue of material fact. *Schuler v. Chronicle Broadcasting Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (addressing the plaintiff's reliance on her own statements that she "felt" competent and was "confident of [her] skills").

In contrast, by presenting the records of Plaintiff's employment history with Defendant; the certifications of Seifert, Iserman, and McCluskey; and portions of Plaintiff's own testimony at his deposition, Defendant documents Plaintiff's inability to conform to his job's requirements, to treat his supervisors and other SCC employees with respect; and to observe the safety and security policies and rules required in the operation of a correctional institution.

In evaluating circumstantial evidence of discrimination, courts use the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Developed to assess claims under Title VII, *McDonnell Douglas* requires a plaintiff to establish a *prima facie* claim by showing

> that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered

///

///

///

an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other action suggests discriminatory motive.

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal 4th 317, 355 (2000).[1]

The burden then shifts to the employer to "set forth competent, admissible evidence of its reasons, unrelated to" discrimination, for taking the allegedly adverse action. *Id.* at 357. Here, for purposes of his Title VII claim, Plaintiff alleges that his dismissal resulted from his ethnicity or national origin; Defendant responded with evidence that Plaintiff was dismissed for a valid reason: his inability to satisfactorily perform his job responsibilities. Plaintiff was then required to present evidence tending to show that Defendant's reasons for discharging him were pretextual.

The principle purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp.*, 477 U.S. at 323-24. Summary judgment is properly granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Designed to ensure that the plaintiff has his day in court even if direct evidence is unavailable, *McDonnell Douglas* is applied when a plaintiff alleges that a defendant has supplied a false pretextual reason for the employment decision when discrimination was the actual reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). To prevail in a summary judgment motion, the plaintiff must produce sufficient evidence to raise a genuine issue of material fact whether the reasons put forth by the employer were a pretext for discrimination. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000), *cert. denied sub nom Gentile v. Quaker Oats Co.*, 533 U.S. 950 (2001); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 (9th Cir. 1994). Although a plaintiff may rest on the evidence used to establish his *prima facie* claim at step one, if that evidence was the minimum needed to create a presumption of discrimination under *McDonnell Douglas*, the plaintiff will have failed to raise a triable issue of fact. *Wallis*, 26 F.3d at 890.

---

[1] Claims under Title VII and the Fair Employment and Housing Act (California Government Code §§ 12900 et seq.) ("FEHA") are subject to the same analysis. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

A plaintiff can prove pretext either directly, by showing that the employer was more likely than not motivated by prejudice, or indirectly, by showing the employer's explanation is not worthy of belief since it is internally inconsistent or otherwise unbelievable. *Raad v. Fairbanks North Star Borough School District*, 323 F.3d 1185, 1194 (9th Cir. 2003). "Stray remarks" are insufficient evidence of discrimination. *Merrick v. Farmers Insurance Group*, 892 F.2d 1434, 1438-39 (9th Cir. 1990). Repeated derogatory remarks are strong evidence of intentional discrimination. *Mustafa v. Clark County School District*, 157 F.3d 1169, 1180 (9th Cir. 1998). In either case, context, inflection, tone of voice, local custom, and historical usage are relevant considerations. *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006). Indirect evidence must be specific and substantial. *Boeing*, 577 F.3d at 1049; *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).

If the employer bears its burden, the plaintiff must "rebut this facially dispositive showing by pointing to evidence which nonetheless raises a reasonable inference that intentional discrimination occurred." *Id.* "[W]hen the employer proffers a facially significant lawful reason for the challenged action, the entire *McDonnell Douglas* framework ceases to have any bearing on the case, and the question becomes whether the plaintiff has shown, or can show, that the challenged action resulted in fact from discriminatory animus rather than other causes." *Reeves v. Safeway Stores, Inc.*, 121 Cal.App.4th 95, 112 (2004) (*internal citations omitted*). Plaintiff provided no such evidence: he never advanced beyond his barely sufficient initial contentions. His summary judgment motion does not support his allegations of discrimination, but minimizes the importance of his failure to report his conviction for hit-and-run driving as irrelevant to his job responsibilities and personally attacks Iserman's dress and morality in a manner that is both inappropriate and offensive.

Ultimately, the plaintiff bears the burden of proving by a preponderance of the evidence that the employer violated Title VII. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Here, Plaintiff fails to do more than attempt to rationalize his actions that led to Defendant's discharging him: his insubordination to supervisors, his disregard of his supervisors' direction, his refusal to participate in the library conference, his personal attacks on Iserman, his

refusal to conform to his job responsibilities, his repeated rudeness to correctional officers such as Pouncy and Belders, his omission of relevant information from his application materials and resume, and his misuse of a government computer. He provides no declarations, excerpts from depositions, or other evidence supporting his claims. Accordingly, Plaintiff is not entitled to summary judgment on this claim; Defendant is entitled to summary judgment on Plaintiff's Title VII claim of discrimination based on national origin.

### D. Age Discrimination Under ADEA

To establish a violation of the Age Discrimination in Employment Act (ADEA), a plaintiff has the burden of proving that his age was the "but-for" cause of the employer's adverse action. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2350 (2009). As is the case with his Title VII claims, Plaintiff fails to provide any evidence whatsoever that Defendant discriminated against him because of his age. 29 U.S.C. § 623. Because the ADEA does not recognize mixed-motive cases, the burden shifting analysis applied in Title VII cases does not apply to ADEA claims. Nonetheless, as discussed within the analysis of Plaintiff's Title VII claims, Defendant provided abundant evidence that its termination of Plaintiff was motivated by performance and discipline concerns, not Plaintiff's age. Plaintiff himself testified at his deposition that nearly all the employees with whom he worked were older than 40 years. No evidentiary basis exists by which the Court could conclude that Plaintiff's age was a factor in Defendant's terminating him during the probationary period. Plaintiff's motion for summary judgment is denied; Defendant's motion for summary judgment is granted.

### E. Retaliation

As previously discussed, Plaintiff contends that, in the course of his dispute with Sergeant Pouncy regarding Plaintiff's attempt to bring unapproved books into SCC, Pouncy asked Plaintiff, "Why do you have your hands on your hips like a girl?" Plaintiff allegedly filed an EEO complaint with SCC regarding this incident, alleging sex discrimination and a sexually hostile work environment. Plaintiff claims that Defendant fired him in retaliation for his EEO complaint.

///

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter,

42 U.S.C. § 2000e-3(a).

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) he engaged in a protected activity; (2) his employer thereafter subjected him to an adverse employment action, and (3) a causal link existed between the first two elements. *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989). A plaintiff may establish a causal link by an inference drawn from circumstantial evidence, such as the proximity of time between the employee's engaging in protected activities of which the employer was aware and the allegedly retaliatory adverse action. *Id.* If the plaintiff can establish a *prima facie* case, the burden shifts to the employer to demonstrate a legitimate non-retaliatory reason for the adverse action. *Id.* The burden then shifts back to the plaintiff, who must prove the employer's reason is pretextual. *Id.*

That Plaintiff was discharged after filing his complaint against Sgt. Pouncy is undisputed. Defendant counters the temporal proximity of Plaintiff's complaint against Pouncy and his discharge from probation with multiple legitimate reasons for Plaintiff's discharge. Plaintiff offers no proof that Defendant's reasons for discharging him are pretextual.

"To establish pretext, an employee must ultimately show by a preponderance of the evidence either (1) that the employer was more likely motivated by a discriminatory reason or (2) that the employer's proffered reason is unworthy of credence." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 372 (7th Cir. 1992) (*internal quotations and citations omitted*). Thus, to a large extent, determining whether an employer's reasons for discharge are pretextual require a court to analyze the parties' relative credibilities. *Id.* When a plaintiff can demonstrate that the employer's stated reasons are incredible, the employee may not need to provide any direct evidence of discrimination. *Id.* In less obvious cases, if the employee can present evidence eliminating all legitimate reasons for the employer's actions, he can show that the

///

employer more likely than not discharged him for a discriminatory reason. *Funco Const. Co. v. Waters*, 438 U.S. 567, 577 (1978).

Plaintiff's presents no evidence other than his own opinion. Neither a plaintiff's subjective beliefs nor his uncorroborated and self-serving declarations are sufficient to create a genuine issue of fact. *Chiaramonte v. Fashion Bed Group, Inc.* 129 F.3d 391, 401 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998). Plaintiff having provided nothing more that his personal assertions and rationalizations for his repeated instances of misconduct, he failed to carry his burden of proving that Defendant's reasons for discharging him from probation were pretextual.

### F.     Res Judicata

Plaintiff contends that, because he prevailed in an unemployment commission action he filed in 2007, this Court is bound by the principles of *res judicata* and collateral estoppel, and may not deviate from the unemployment commission's determination that Defendant wrongfully terminated Plaintiff. Because Plaintiff submits absolutely no evidence supporting his assertion of the California Department of Labor's "decision," this Court is unable to evaluate the credibility of Plaintiff's assertions.

In any event, California law explicitly prohibits using an administrative decision regarding unemployment insurance being applied as conclusive or binding in any other action, or even being used as evidence in a separate or subsequent action. Cal. Unemployment Ins. Code § 1960. A decision of the California Unemployment Insurance Appeals Board does not preclude relitigation of the reasons for an employee's discharge in a later civil proceeding. *Pichon v. Pacific Gas & Electric Co.*, 212 Cal.App.3d 488, 492 (1989).

### G.     Exhaustion

Defendant contends that, because Plaintiff failed to exhaust his administrative remedies before bringing this suit, the Court cannot address the substantive merit of all of Plaintiff's issues. The evidentiary record being inadequate to allow a confident determination of what matters Plaintiff raised administratively, the Court declines to eliminate any pending issue based on Plaintiff's failure to exhaust.

IV.     **Conclusion and Order**

This Court hereby ORDERS that:

1.      Plaintiff's motion for summary judgment (Doc. 51) is DENIED;

2.      Defendant's motion for summary judgment (Doc. 43) is GRANTED;

3.      The Clerk of Court is directed to enter judgment for Defendant.


IT IS SO ORDERED.

**Dated:    April 5, 2012**                             /s/ Sandra M. Snyder
                                                UNITED STATES MAGISTRATE JUDGE